IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Jonathon Richardson and § | |
| Brittany Richardson, Individually and § | |
| As Legal Heirs to the Estate of M.B.R., § | |
| A Deceased Minor; and as § | |
| Next Friends to B.S.R., § | |
| A Minor, § | |
| § | |
| *Plaintiffs*, § | |
| § | |
| vs. § | Civil Action No. 2:13-CV-00539 |
| § | |
| § | |
| Toyota Motor Corporation, § | |
| § | |
| *Defendant*. § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

**To the Honorable United States Judge of Said Court:**

COME NOW, Jonathan Richardson and Brittany Richardson, both in their individual capacities and as Legal Heirs to the Estate of M.B.R., a deceased minor, as well as Next Friends to B.S.R., a minor (hereinafter referred to as "Plaintiffs"), by and through undersigned counsel, and respectfully file this First Amended Complaint against Toyota Motor Corporation (hereinafter referred to as "Defendant").

In support hereof, the Plaintiffs would state and show unto this Honorable Court the following:

## I. Parties

1. Plaintiffs Jonathon Richardson and Brittany Richardson are the biological parents of M.B.R., a deceased minor and B.S.R., a minor. They reside in and are citizens of Jasper, Texas.

2. Defendant Toyota Motor Corporation is a foreign Corporation doing business in Texas, and service of process upon this Defendant is not necessary as Defendant has already appeared through counsel and filed responsive documents in this matter.

## II. Jurisdiction

3. This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

4. The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## III. Facts

5. On April 27, 2013, Brittany Richardson was driving a 2010 Toyota Corolla (VIN#1NXBU4EE4AZ362055), traveling northbound on US 96, at the intersection of FM 201 in Sabine County, Texas when suddenly her vehicle was involved in an accident with another vehicle being driven by Samuel Herrington.

6. During the accident sequence, M.B.R., a minor child, was fatally injured when her vehicle failed to protect her.

## IV. Cause(s) of Action as to Defendant

7. It was entirely foreseeable to and well-known by Defendant that accidents and incidents involving its vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

8. The injuries complained of occurred because the vehicle in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The vehicle in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

9. Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question.

10. As detailed herein, the vehicle contains and/or Toyota has committed either design, manufacturing, marketing, assembling, and/or testing defects.

11. Defendant knew or should have known of safer alternative designs which would have prevented the death of M.B.R., a minor child.

12. The subject vehicle contained no visible warnings on the seat or any part of the seatbelt to not put the shoulder portion of the seatbelt behind the back.

13. The subject vehicle's owner's manual contained no warnings about the dangers of putting a seatbelt behind the back.

14. A manufacturer should provide an adequate warning to the end users of its product if it knows or should know of any potential harm that may result from the use of its product.

15. Before Toyota manufactured the subject vehicle, it knew of the dangers and risks of a person putting a seatbelt behind the person's back.

16. Before Toyota manufactured the subject vehicle, it knew of the dangers of children putting a seatbelt behind the child's back.

17. Before Toyota manufactured the subject vehicle, it knew that a foreseeable misuse of its seatbelts was to put it behind a person's back, and it also knew that children do that for a variety of reasons.

18. Toyota states on its website and/or in advertising materials that it aggressively investigates accidents and collects huge volumes of accident data from around the world to help design and improve the passive safety systems in its vehicles.

19. If this is true, then Toyota would know of the dangers of belt misuse and/or a person putting the shoulder belt of a seatbelt behind their back.

20. The subject vehicle contained a reversed latch plate which caused the seatbelt to be twisted. This is a manufacturing defect.

21. Twisted webbing is also a design defect.

22. Toyota knew or should have known of the danger of either a reversed latch plate and/or twisted webbing yet it persisted in using this design.

23. Toyota has claimed that it runs crash tests in part to decrease injury potential for occupants of its vehicles to "a reasonable level", yet there is no written document within Toyota which defines what "reasonable level" means.

24. Toyota has claimed that everybody at Toyota strives for being No. 1 in the area of safety in the world.

25. Toyota has claimed that it is always developing its vehicles with safety in mind, and that it develops vehicles carefully, cautiously, and with all due considerations.

26. Toyota has claimed that it is always trying to take leadership in the industry in the pursuit of superior performance for the sake of safety.

27. Toyota has claimed that safety is built into everything it does and everything it makes.

28. Toyota has claimed that it believes that everyone deserves to be safe.

29. Yet, Toyota failed to conduct any testing for the subject platform vehicle with a rear-seated child dummy or 5th percentile females.

30. In fact, in the last twenty years, Toyota has never conducted any testing for any vehicle sold worldwide with a rear-seated child dummy or 5th percentile females.

31. The lack of testing on the part of Toyota is negligence, and directly counters Toyota's past statements including the statement that everybody at Toyota strives to be No.1 in the area of safety in the world.

32. In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

33. Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

34. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

35. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

36. A company that does not conduct conduct engineering analysis that would help it to identify potential risk, hazards, and/or dangers that could seriously injure someone is negligent.

37. Toyota failed to conduct any engineering analysis on the risks, hazards, and/or dangers of wearing a seatbelt behind the back or sitting rotated in the rear seat. This is negligence.

38. Toyota has claimed that it makes real innovations to help keep your family safe, so you can enjoy the journey.

39. Yet, there were no real innovations for safety for the right rear restraint system in the subject vehicle.

40. In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

    a. the vehicle failed to provide proper restraint;
    b. the vehicle violated principles of crashworthiness by not providing proper restraint;
    c. Defendant failed to conduct proper engineering analysis and/or testing;

    d.   the rear seat restraint system fails to properly protect children that are large enough to use no belt positioning booster seat;

    e.   the rear seat restraint system violated principles of crashworthiness;

    f.   the Defendant failed to conduct testing with proper occupants in the rear seat; and/or

    g.   the Defendant failed to conduct proper engineering analysis.

41.   Defendant was negligent in the design, manufacture, assembly, marketing, and/or testing of the vehicle in question.

42.   The foregoing acts and/or omissions of Defendant were a producing, direct, and/or proximate cause of the minor child's fatal injuries.

43.   The foregoing acts and/or omissions of Defendant were a producing, direct, and/or proximate cause of Plaintiffs' damages.

## V. Damages

44.   Plaintiffs seek recovery for damages under any applicable statute and/or common law of the state of Texas, including, but not limited to any wrongful death and/or survival causes of action.

45.   As a result of the acts and/or omissions of Defendant, Plaintiff M.B.R. suffered disfigurement, conscious physical and emotional pain, torment, mental anguish, and/or emotional distress prior to her death, and these injuries survive her death through her estate and/or heirs.

46.   As a result of the acts and/or omissions of Defendant, Plaintiffs Jonathon Richardson and Brittany Richardson have become obligated to pay reasonable and necessary funeral and burial expenses as a result of the fatal injuries to M.B.R.

47.   As a result of the acts and/or omissions of Defendant, Plaintiffs have suf-

fered past and future: loss of care, maintenance, support, services, advice, counsel, reasonable contributions of a pecuniary value, loss of companionship and society, loss of consortium, pain and suffering, emotional distress, and/or mental anguish as a result of the fatal injuries to M.B.R.

48. As a result of the acts and/or omissions of Defendant, Plaintiffs, Brittany Richardson and B.S.R., have suffered mental anguish and emotional distress over the shock from the sensory and contemporaneous observance of the death of M.B.R.

49. The above and foregoing acts and/or omissions of Defendant, resulting in the the death of M.B.R., have caused actual damages to Plaintiffs in an amount in excess of the minimum jurisdictional limits of this Court.

## VI. Conclusion and Prayer

50. For the reasons presented herein, Plaintiffs pray that upon a final trial of this cause, Plaintiffs recover judgment against Defendants for:

    a.    actual damages;
    b.    economic and non-economic damages;
    c.    prejudgment and post-judgment interest at the maximum legal rate provided by law;
    d.    costs of suit; and
    e.    all other relief, general and special, to which Plaintiffs are entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,

**The TRACY firm**

  /s E. Todd Tracy
E. Todd Tracy (Attorney-in-Charge)
State Bar No. 20178650
EToddTracy@vehiclesafetyfirm.com
Stewart D. Matthews
State Bar No. 24039042
SMatthews@vehiclesafetyfirm.com
Andrew G. Counts
State Bar No. 24036408
ACounts@vehiclesafetyfirm.com
5473 Blair Road, Suite 200
Dallas, Texas  75231
(214) 324-9000 – Phone
(972) 387-2205 – Fax

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of September, 2014, I caused to be electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

  /s E. Todd Tracy
E. Todd Tracy
Stewart D. Matthews
Andrew G. Counts