IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JONATHON RICHARDSON AND BRITTANY RICHARDSON, INDIVIDUALLY AND AS LEGAL HEIRS TO THE ESTATE OF M.B.R., A DECEASED MINOR; AND AS NEXT FRIEND TO B.S.R., A MINOR, | § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 2:13-CV-00539 |
| vs. | § § | |
| TOYOTA MOTOR CORPORATION, | § § | |
| Defendant. | § § | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENT TO
THEIR MOTION TO COMPEL**

To the Honorable United States Judge of Said Court:

Pursuant to the Court's instructions at the hearing held on September 4, 2014 Defendant Toyota Motor Corporation (TMC) respectfully submits a response to Plaintiffs' list of the specific material that they are asking TMC to produce in this matter.

**I.    BACKGROUND**

Since the hearing on September 4, 2014, Plaintiffs have dramatically changed their factual assertions and their claim of defect, which renders completely irrelevant much of the information sought by Plaintiffs in their Motion to Compel. On September 5, 2014, Plaintiffs designated their experts and provided Defendant Toyota Motor Corporation (TMC) with their expert reports. Plaintiffs designated Neil Hannemann to testify regarding Plaintiffs' alleged defect claims and Chandra Thorbole to testify on occupant kinematics.

In their reports, Plaintiffs' experts abandon claims related to seatbelt geometry and belt fit. Plaintiffs' experts concede that M.B.R. was positioned toward the center of the vehicle with her left leg under her buttocks and that she had her shoulder belt behind her back. *See* Rep. of Neil Hannemann Ex. A, at 6; Rep. of Chandra Thorbole Ex. B, at 7. Regardless, they argue, her seatbelt usage and her seating position did not cause her fatal injuries. *See* Hannemann Ex. A, at 14-17; Thorbole Ex. B, at 12. Plaintiffs' experts instead allege that it was the twist in the seatbelt that fatally injured M.B.R. *See* Hannemann Ex. A,

at 14-15; Thorbole Ex. B, at 12.  Their argument continues that, had M.B.R. worn her seatbelt properly, "this would have reduced the severity of her injury to being minor and non-debilitating compared to the fatal accident of the case."  Thorbole Ex. B, at 11; *accord* Hannemann Ex. A, at 20.

In other words, Plaintiffs have abandoned their design claims relative to seatbelt geometry and fit. Instead, they now claim there was a manufacturing defect in the right rear seatbelt because, they allege, the latch plate was reversed at the time the Corolla was manufactured. They claim this manufacturing defect resulted in the belt being "twisted" at the time of the crash causing the fatal injuries. Plaintiffs' design defect is now based on their contention that the design of the latch plate makes it "impossible" for the user to correct the alleged reversed latch plate condition.

Along with designating their experts on September 5, 2014, Plaintiffs also filed their First Amended Complaint.  (**Doc. 37**).  In this pleading, Plaintiffs eliminated their claims related to belt geometry and fit by removing their allegations that the rear restraint system "lacks proper belt geometry" and "fails to have adjustable guide loops."  *See* Doc. 1.  Therefore, based on Plaintiffs' expert reports and their First Amended Complaint, any request seeking information related to belt geometry and fit is no longer a request for relevant information.

Plaintiffs not only have abandoned all claims regarding belt fit and geometry but have also eliminated all claims for which information on child-sized dummies would be relevant.  In their First Amended Complaint, Plaintiffs removed their claims related to the only child-sized Corolla occupant, B.S.R.  *See* Doc. 37.  Plaintiffs, instead, focus entirely on the right rear restraint system and occupant M.B.R.  *See id.* Plaintiffs' expert reports consequently never substantively discuss B.S.R.  Although M.B.R. was eleven years old, she was taller and weighed more than a 5th percentile female anthropomorphic test dummy.[1] Thus, TMC should not be compelled to produce any information related to child-sized anthropomorphic test dummies as that information is now irrelevant.

---

[1]   Plaintiffs' expert states that she was 5 feet 2 inches and weighed 118 pounds.  *See* Thorbole Ex. A, at 7.  A 5th percentile female anthropomorphic test dummy is 4 feet 9 inches and weighs 108 pounds.

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENT TO THEIR MOTION TO COMPEL         PAGE 2**

## II. RESPONSES TO PLAINTIFFS' LIST OF REQUESTS

| No. | Material Requested By Plaintiffs | Plaintiffs' Stated Reason For Request | TMC's Response |
|---|---|---|---|
| 1. | All sled and crash tests of any Toyota passenger car, SUV, light truck, or minivan where—in the rear seats—there was a 10-year-old (child) or 5th percentile female anthropomorphic test dummy (ATD).<br><br>The requested years are from 1990-2010 and all vehicles sold worldwide. | Helps establish potential safer alternative designs as well as notice to Toyota of potential safety issue(s).<br><br>Belt geometry helps define belt fit. There are numerous rear seat design configurations that Toyota may have used in any of these tests. These designs can affect belt geometry. It is believed that no such test was ever conducted, but confirmation is needed. | TMC agrees to search for, and if any are located, produce sled and crash tests for the model year 2009-2013 U.S. bound Corolla model series in which a 5th percentile female ATD in a rear, outboard seat was secured with a twisted seatbelt or with the shoulder belt behind its back. As discussed above, any testing related to properly belted rear occupants and belt geometry or fit or child-sized ATDs is irrelevant given Plaintiffs' expert reports and First Amended Complaint.<br><br>Additionally, Plaintiffs have failed to meet their burden to demonstrate that any other vehicles are substantially similar to the subject 2010 Corolla, other than the 2009-2013 US bound Corolla model run. The subject vehicle model series is not substantially similar to any Toyota passenger car, SUV, light truck, or minivan from 1990-2010 sold worldwide. The subject vehicle model series is substantially dissimilar to many of the other vehicles on which Plaintiffs seek discovery. These include non-US bound vehicles, SUVs, trucks, 2-door coupes and larger sedans. Consequently, any testing conducted on any other Toyota passenger cars, SUVs, light trucks, or minivans from 1990-2010 would not provide relevant information and cannot be used to established potential safer alternative designs.<br><br>Due to the extensive breadth of material sought and the sweeping scope of Plaintiffs' discovery demand, TMC would experience a significant burden in locating, organizing, and producing materials for any other Toyota passenger car, SUV, light truck, or minivan from 1990-2010 sold worldwide. This burden includes both the expense of the search and the significant drain on employee resources due to the amount of time and number of employees needed to conduct the search. |

| | | | |
|---|---|---|---|
| **2.** | Plaintiffs want all instances (if any) that Toyota is aware of where a similar EDR (black box) has recorded crash data but been determined by Toyota or others to be incorrect. This would include during testing or from real world crash events.<br><br>This request is not limited to this platform vehicle. | It is anticipated that Toyota will rely heavily upon the EDR data for its defense(s).<br><br>Plaintiffs believe that the EDR data is flawed based upon prior cases as well as the analysis conducted so far by Plaintiffs' experts. | TMC agrees to produce reports on the validity of data captured by the electronic data recorder (EDR) applicable to the subject 2010 Corolla.<br><br>TMC will also search for and produce, if any are located, frontal crash incidents in which TMC determined data regarding frontal delta-V captured by the same type of electronic data recorded (EDR) as the subject EDR in the subject 2010 Corolla was overstated.<br><br>Due to the extensive breadth of material sought and the sweeping scope of Plaintiffs' discovery demand, TMC objects to producing materials related to other EDRs or regarding data points unrelated to frontal delta-V as such are not relevant to this case and Plaintiffs' claims. |
| **3.** | Any study that Toyota has ever conducted regarding seatbelt misuse, such as putting the shoulder belt behind the back or wearing the seatbelt incorrectly. | During this case (and at the hearing), Toyota has indicated that one of its defenses is that the minor child was wearing the seatbelt incorrectly and had placed the seatbelt behind her back.<br><br>If Toyota has conducted studies in the past regarding seatbelt misuse, it is important to find out what the results were. This goes to Toyota's notice and whether steps were taken to design away or guard against the risk, hazard, or danger which may have been identified in one of these studies. | TMC has searched for but has not located any technical articles authored by its engineers discussing the risk of injury to improperly restrained child occupants in a 3-point seatbelt and involved in a frontal collision. |

| | | | |
|---|---|---|---|
| **4.** | Copies of any testimony from any past employee or corporate representative of Toyota where the issues of either belt misuse or belt fit/comfort/geometry by children was discussed. | Same as above. | As discussed above, any testing related to properly belted rear occupants and belt geometry or fit or child-sized ATDs is irrelevant given Plaintiffs' expert reports and First Amended Complaint. However, TMC agrees to conduct a reasonable search of its records, as they are kept in the ordinary course of business and in places where such information may reasonably be located, for transcripts of depositions or trial testimony given by a current or former TMC employee in a personal injury case involving a frontal collision in a model year 2009-2013 US bound Corolla and rear, outboard occupant belt misuse or a defect claim related to seatbelt twist or a reversed latch plate in the rear outboard seat restraints. |
| **5.** | Any Design Failure Mode Effects Analysis (DFMA), Failure Mode Effects Analysis (FMEA), fault tree analysis, root cause analysis, risk hazard analysis, or engineering triad analysis (or by whatever term used within Toyota, as auto manufacturers differ on their terms) which Toyota conducted on the subject platform for:<br>• children in a rear seat using an adult seatbelt;<br>• belt geometry for children or 5th percentile females in a rear seat;<br>• belt routing for children or 5th percentile females in a rear seat;<br>• belt twist for rear seatbelts on the right-hand outboard seating position;<br>• latch plates getting reversed for rear seatbelts;<br>• seat cushion depth for children or 5th percentile female in rear seats;<br>• misrouting of a seatbelt by children or 5th percentile females in the rear seat;<br>• belt comfort for children or 5th percentile females in rear seat;<br>• seatbelt rollout by children or 5th percentile females in rear seat. | Engineering analysis techniques exist wherein engineers brainstorm about the potential uses and misuses of vehicles or safety equipment, and about the potential risks, hazards, or dangers associated with various scenarios wherein a risk assessment or safety assessment grade is given.<br><br>Part of the engineering analysis process is identifying the potential risks, hazards, or dangers associated with a given design under various scenarios.<br><br>Once the risk, hazard, or danger is identified, engineers then design away or guard against the potential risk, hazard, or danger.<br><br>If no such engineering analysis assessment was conducted on the subject platform vehicle, then Plaintiffs need to be advised as it goes against Toyota's prior statements in litigation and marketing materials that safety is its number 1 priority and that it rigorously tests and innovates with regards to safety. | TMC agrees to search for, and if located, produce engineering analyses related to the risk of injury in a frontal crash to small occupants in a rear, outboard seat as a result of a twisted seatbelt, a reversed latch plate and/or wearing the shoulder belt of a 3-point restraint behind the back. Engineering analyses performed for other occupant positions are not relevant as the claims in this case are related to injuries of the right rear occupant in the subject vehicle. Additionally, as discussed above, any testing related to properly belted rear occupants and belt geometry or fit or child-sized ATDs is irrelevant given Plaintiffs' expert reports and First Amended Complaint. |

| | | | |
|---|---|---|---|
| **6.** | Any sled or crash testing for the front or rear seat where Toyota had put a twist on the seatbelt. <br><br> The requested years are from 1990-2010 and all vehicles sold worldwide. | In the 2010 owner's manual, Toyota mentions the dangers of belt twist numerous times. <br><br> The testing is necessary to establish Toyota's notice of the risks, hazards, or dangers of a twisted seatbelt. It also goes to notice of a concealed defect that the public would not know about. This testing can also go to help establishing a design defect or manufacturing defect. | TMC incorporates its response to Request No. 1, above. |
| **7.** | All dealer service bulletins, technical notices, technical service bulletins, dealer notifications, customer notifications, or by whatever called within where Toyota was advising anyone that the latch plate in the right hand rear outboard side could get reversed or cause the webbing to become twisted. <br><br> This request would include any claims or lawsuits that Toyota has been made aware of involving twisted belts or reverse latch plates. It would also include any NHTSA complaints, or EA, PE, ODI. or recall investigations by the NHTSA. <br><br> This request is limited to the vehicle platform. | Toyota's counsel is in agreement to produce these materials. | TMC agrees to produce non-privileged materials related to warranty claims, technical service bulletins, lawsuits, and/or recalls involving an allegation of a reversed passenger latch plate in an outboard, right rear seat position in the subject 2009-2013 Corolla model series. |

Respectfully submitted,

    */s/ Kurt C. Kern*
**KURT C. KERN – Lead Counsel**
State Bar No. 11334600
kurt.kern@bowmanandbrooke.com
**DAVID P. STONE**
State Bar No. 19289060
david.stone@bowmanandbrooke.com
**TANYA B. SCARBROUGH**
State Bar No. 24049268
tanya.scarbrough@bowmanandbrooke.com
**AMANDA R. MCKINZIE**
State Bar No. 24088028
amanda.mckinzie@bowmanandbrooke.com
2501 N. Harwood Street, Suite 1700
Dallas, TX 75201
Telephone:    972.616.1700
Telecopier:    972.616.1701

**ATTORNEYS FOR DEFENDANT
TOYOTA MOTOR CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing document was served on all counsel of record according to the Federal Rules of Civil Procedure on this the 12th day of September, 2014.

    */s/ Kurt C. Kern*