IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JONATHON RICHARDSON AND §<br>BRITTANY RICHARDSON, §<br>INDIVIDUALLY AND AS LEGAL HEIRS TO §<br>THE ESTATE OF M.B.R, A DECEASED §<br>MINOR ; AND AS NEXT FRIEND TO B.S.R., §<br>A MINOR, §<br>    *Plaintiffs*, §<br>§<br>v. §<br>§<br>TOYOTA MOTOR CORPORATION, §<br>    *Defendant.* § | CASE NO. 2:13-cv-539-JRG |

# ORDER

Before the Court are Plaintiffs Jonathon Richardson and Brittany Richardson, individually and as legal heirs to the estate of M.B.R., a deceased minor; and as next friend to B.S.R, a minor ("the Plaintiffs") Motion to Compel Discovery (Dkt. No. 31) from Defendant Toyota Motor Corporation ("TMC" or "the Defendant"). Having considered the motion, the Defendant's Response (Dkt. No. 33), the arguments made at the hearing on the Motion to Compel, which was held on September 4, 2014, as well as the parties' supplemental briefings (Dkt. Nos. 35 & 39) the Court is persuaded that the Plaintiffs' Motion to Compel Discovery (Dkt. No. 31) should be **GRANTED IN PART** and **DENIED IN PART**.

   **I.    Applicable Law**

The party requesting discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. Fed. R. Civ. P. 37. In resolving any disagreements, "[a] district court has broad discretion in all discovery matters . . . ." *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)); *see also Alpine*

*View Co. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000).  In exercising this discretion, the courts accord the rules of discovery a broad and liberal application to affect their purpose of adequately informing litigants in civil trials.  *Herbert v. Lando,* 441 U.S. 153, 176 (1979).  The moving party bears the burden of showing that the materials and information sought are "relevant to any party's claim or defense" or "appear[] reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

II.     **Discussion**

Although this Court repeatedly asked both the Plaintiffs and the Defendant to meet and confer regarding the scope of the discovery in this case, the two parties are still in substantial disagreement about what should and should not be produced.  Given this substantial disagreement, the Court asked the parties to produce a document itemizing the specific material requested and each party's argument concerning those items.  The parties produced this list and those arguments (Dkt. Nos. 35 & 39).  It is apparent from the documents and the oral arguments that the parties generally agree about what *kinds* of materials should be produced, but disagree as to the *scope* of the disclosure.  The Court now proceeds to resolve their disagreements, taking each itemized request in turn:

1. The Plaintiffs request "[a]ll sled and crash tests of any Toyota passenger car, SUV, light truck, or minivan where—in the rear seats—there was a 10-year-old (child) or 5th percentile female anthropomorphic test dummy (ATD).  The requested years are from 1990-2010 and all vehicles sold worldwide."

   TMC, in response, agreed to produce "sled and crash tests for the model year 2009-2013 U.S. bound Corolla model series in which a 5th percentile female ATD in a rear, outboard seat was secured with a twisted seatbelt or with the

2

> shoulder belt behind its back."

The Court is convinced that Plaintiffs' scope is too wide while the Defendant's is too narrow. Accordingly, the Court ORDERS the Defendant to produce the following: all sled and crash tests of any Toyota passenger car, SUV, light truck, or minivan with a 10-year old child or 5th percentile female anthromorphic test dummy (ATD) in the rear, outboard seat for model years 2000-2010 vehicles sold worldwide.

> 2. The Plaintiffs request "all instances (if any) that Toyota is aware of where a similar electronic data recorder (EDR) (black box) has recorded crash data but been determined by Toyota or others to be incorrect. This would include during testing or from real world crash events. This request is not limited to this platform vehicle."
>
> TMC, in response, agreed to produce "reports on the validity of data captured by the electronic data recorder (EDR) applicable to the subject 2010 Corolla, [as well as] frontal crash incidents in which TMC determined data regarding frontal delta-V captured by the same type of electronic data recorded (EDR) as the subject EDR in the subject 2010 Corolla was overstated.

The Court is convinced that not all EDR data points are relevant. Therefore, the Court ORDERS that TMC produce (1) any report discussing the validity of data captured by an EDR of the same type used on the model run Corolla (2009-2013), and (2) all instances where EDR data points relating to speed change at the moment of impact were incorrect (both overstated and understated) for any EDR of the same type as used on the model run 2009-2013 Corolla. This production is not limited to frontal-speed-change data points at impact (frontal delta-V), but includes any data points where the speed at the moment of any impact was believed to be

incorrect.

    3. The Plaintiffs request "[a]ny study that Toyota has ever conducted regarding seatbelt misuse, such as putting the shoulder belt behind the back or wearing the seatbelt incorrectly."

    TMC, in response, "has searched for but has not located any technical articles authored by its engineers discussing the risk of injury to improperly restrained child occupants in a 3-point seatbelt and involved in a frontal collision."

The Court ORDERS that TMC re-search their records for and produce (if found) the following: any study or article produced by Toyota that discusses the risk of injury to improperly restrained child occupants in a 3-point seatbelt.  The study or articles should not be limited to frontal collisions.

    4. The Plaintiffs request "[c]opies of any testimony from any past employee or corporate representative of Toyota where the issues of either belt misuse or belt fit/comfort/geometry by children was discussed."

    TMC, in response, agrees "to conduct a reasonable search of its records, as they are kept in the ordinary course of business and in places where such information may reasonably be located, for transcripts of depositions or trial testimony given by a current or former TMC employee in a personal injury case involving a frontal collision in a model year 2009-2013 US bound Corolla and rear, outboard occupant belt misuse or a defect claim related to seat-belt twist or a reversed latch plate in the rear outboard seat restraints."

The Court ORDERS that TMC produce the following: copies of testimony (either live testimony or deposition testimony) from the past 10 years where any current or former employee or

corporate representative of Toyota discussed the issues of either belt misuse by children or belt fit/comfort/geometry by children. Information regarding children of age 14 and younger is deemed relevant, while information regarding children age 15 and older is deemed not relevant.

> 5. The Plaintiffs request "[a]ny Design Failure Mode Effects Analysis (DFMA), Failure Mode Effects Analysis (FMEA), fault tree analysis, root cause analysis, risk hazard analysis, or engineering triad analysis (or by whatever term used within Toyota, as auto manufacturers differ on their terms) which Toyota conducted on the subject platform for:
>
> • children in a rear seat using an adult seatbelt;
>
> • belt geometry for children or 5th percentile females in a rear seat;
>
> • belt routing for children or 5th percentile females in a rear seat;
>
> • belt twist for rear seatbelts on the right-hand outboard seating position;
>
> • latch plates getting reversed for rear seatbelts;
>
> • seat cushion depth for children or 5th percentile female in rear seats;
>
> • misrouting of a seatbelt by children or 5th percentile females in the rear seat;
>
> • belt comfort for children or 5th percentile females in rear seat;
>
> • seatbelt rollout by children or 5th percentile females in rear seat.
>
> TMC has agreed to "search for, and if located, produce engineering analyses related to the risk of injury in a frontal crash to small occupants in a rear, outboard seat as a result of a twisted seatbelt, a reversed latch plate and/or wearing the shoulder belt of a 3-point restraint behind the back."

Although TMC argues that "any testing related to properly belted rear occupants and belt geometry or fit or child-sized ATDs is irrelevant," the Court is not persuaded. However, the

5

Court does agree that seatbelt rollout by children or 5th percentile females is no longer an issue in this case based on the expert reports. In addition, TMC argues that it should only be required to produce engineering analyses for the rear outboard seat, while the Plaintiffs argue for analyses related to all rear seat positions. The Court is persuaded that all rear seat positions are relevant. The Court ORDERS that TMC produce all that is requested by the Plaintiff listed under this item, with the exception of "seatbelt rollout by children or 5th percentile females in rear seat" for all rear seat positions.

6. The Plaintiffs request "[a]ny sled or crash testing for the front or rear seat where Toyota had put a twist on the seatbelt. The requested years are from 1990-2010 and all vehicles sold worldwide.

TMC, in response, incorporates their arguments from Request #1 above.

The Court believes that data covering the past 10 years is sufficient without creating an undue burden on TMC, and that a twist in the rear and front seatbelts are both relevant. The Court therefore ORDERS that TMC produce any sled or crash testing for any front or rear seat where Toyota put a twist on the seatbelt for all vehicles model years 2000-2010 sold worldwide.

7. As for item number 7, the parties appear to be in agreement.

To the extent the parties are not in agreement, the Court ORDERS that TMC produce: all dealer service bulletins, technical notices, technical service bulletins, dealer notifications, customer notifications, or by whatever term they are called within TMC, where TMC was advising anyone that the latch plate in the right hand rear outboard side could get reversed or cause the webbing to become twisted. This production will include any claims or lawsuits that TMC has been made aware of involving twisted belts or reverse latch plates. It shall also include any NHTSA complaints, or EA, PE, ODI or recall investigations by the NHTSA. However, this

request is limited to the 2009-2013 Corolla model series.

**So ORDERED and SIGNED this 24th day of September, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE